SUTIN, Judge (concurring in part and dissenting in part). {24} I concur in all but the majority’s UPA analysis and holding, with respect to which, I respectfully dissent. {25} The tax advice at issue related to a variable annuity. The advice was not given to induce or consummate a sale of anything. There exists no evidence that the advice was given for any compensation or income growing out of the sale of the variable annuity. Furthermore, the advice was given long after the sale of the variable annuity. {26} The tax advice unquestionably was not a “good.” It was not given in connection with the sale of goods. The variable annuity at issue is a security or is in the nature of a security. See Sec. & Exch. Comm’n v. Variable Annuity Life Ins. Co. of Am., 359 U.S. 65, 66, 71 (1959) (holding that companies who offered their annuity contracts to the public were subject to federal securities laws); Gilmore v. Mony Life Ins. Co. of Am., 165 F. Supp. 2d 1276, 1280 (M.D. Ala. 2001) (observing that the Supreme Court, in Securities & Exchange Commission, held that variable annuities are securities subject to the commission’s registration requirements); N.M. Life Ins. Guar. Ass'n v. Quinn & Co., 1991-NMSC-036, ¶ 15 n.5, 111 N.M. 750, 809 P.2d 1278 (adopting federal precedent in construing the New Mexico definition of “security”). A variable annuity, like a security, does not come within the ambit of “goods.” See Estate of Migliaccio v. Midland Nat’l Life Ins. Co., 436 F. Supp. 2d 1095, 1108-09 (C.D. Cal. 2006) (holding that, under California Consumers Legal Remedies Act, annuities are not goods or services); State ex rel. McGraw v. Bear, Stearns & Co., 618 S.E.2d 582, 585-86 (W. Va. 2005) (stating that securities are “instruments” not “goods” in the context of West Virginia’s consumer protection statute); cf. Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc., 778 F. Supp. 2d 726, 738 (N.D. Tex. 2011) (“Stocks, like other securities, are not goods.”); Hand v. Dean Witter Reynolds, Inc., 889 S.W.2d 483, 486-87, 496-97 (Tex. App. 1994) (holding that intangibles, including commodity option contracts, are not “goods” as that term is defined by the Texas Deceptive Trade Practices — Consumer Protection Act). {27} The majority hinges its UPA applicability on an analysis that connects the tax advice to the annuity transaction. Majority Op. ¶¶ 18-19.[2] There is no connection to be had. The tax advice was not an independent sale of services. Nor was it given in connection with a sale of a service. Nor was it incidental to the annuity purchase. The advice at best was simply related to the Plaintiffs ownership of the variable annuity and Plaintiff’s plan to surrender part of the annuity to use the funds for another investment. Even if some continuing relationship between the advice and the annuity transaction could be found, the advice was so incidental and remote that it cannot come within the UPA. See McGraw, 618 S.E.2d at 586 (“Clearly, the service of providing investment advice and analyses is so ancillary or subsidiary to the buying and selling of securities, it is only reasonable to conclude that such conduct does not fall within the scope of the consumer-type transactions governed by the consumer protection act.”); see generally Hand, 889 S.W.2d at 499 (recognizing that to some extent all transactions involve human service, the cost of which is included in the price of the transaction; however, where the acquisition of that service is not the main objective of the transaction, consumer protection laws do not apply); cf. Thomas v. Metro. Life Ins. Co., 631 F.3d 1153, 1160, 1166 (10th Cir. 2011) (distinguishing investment advisers, who give advice for its own sake, who are specifically hired to do so, and for which advice the adviser receives special compensation from broker-dealers who receive brokerage commissions for transactions involving incidental investment advice, and recognizing that advice about the value of securities, the advisability of purchasing or selling securities, is solely incidental to the conduct of a broker-dealer’s business). Any such incidental, remote relationship between the purchase of the annuity and the tax advice given years later related to a partial surrender of the annuity should not bring mere tax advice within the scope of the UPA. {28} I am not aware of any New Mexico authority or a reasoned analysis of legislative intent that would support viewing such advice as being covered by the UPA. Cf. Grassie v. RoswellHosp. Corp., 2011-NMCA-024, ¶ 85, 150 N.M. 283, 258 P.3d 1075 (recognizing that the application of unfair trade practices laws to legal, medical, and other professionals is limited to entrepreneurial aspects of practices such as advertising, solicitation of business, and billing practices). The extension of the UPA to cover the tax advice as a “sale . . . of . . . services” goes beyond what the Legislature couldhave intended. See § 57-12-2(D). {29} I suspect that a study of case law will indicate that knowingly made misrepresentations[3] relating to securities and to advice given by professionals are more than adequately covered by securities laws and malpractice claims and are not in need of a broadening of the UPA to cover a circumstance like that in the case before us. JONATHAN B. SUTIN, Judge The district court adopted verbatim Plaintiffs requested finding that “Defendant. . . Garrett received financial compensation in connection with the sale of financial products” sold to Plaintiff and for Garrett’s provision of “financial advisor services}.]” The majority reads this finding to mean that “Defendants received compensation for the goods and services provided to Plaintiff}.]” Majority Op. ¶ 18. I see no basis on which to conclude from the district court’s broad, if not ambiguous, finding that the court found that Defendants received compensation in April 2002 (when the annuity purchase occurred) for any tax advice that might happen to be given some time in the future, here, five and one-half years later, in or about October 2007. The majority points out that Defendants did not specifically attack this unclear finding. MajorityOp. ¶ 18. In my view, reliance on file finding creates bad law — expansion of the UPA beyond its intended limit. It does not appear that Defendants contested liability on the ground that the misrepresentations were not made “knowingly” and, thus, intentionally under Section 57-12-2(D).